**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ANGELA COLEMAN, | Civil Action No. 5:16-cv-02445 |
| Plaintiff, | |
| v. | JUDGE JOHN ADAMS |
| NORDONIA HILLS CITY SCHOOL DISTRICT BOARD OF EDUCATION | ADMINISTRATIVE APPEAL FROM OHIO DEPARTMENT OF EDUCATION CASE NO. SE 3113-2015 |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF JUDGMENT ON**
**THE ADMINSTRATIVE RECORD**

Jason D. Wallace (0090167)
270 S. Cleveland Massillon Rd
Fairlawn, OH 44333
Phone: (234) 466-0829
Fax: 866-573-8376
Jason@gethelpohio.com

ATTORNEY FOR PLAINTIFF

Christina Henagen Peer
Sara Ravas Cooper
Kathryn I. Perrico
Walter & Haverfield
3500 Tower at Erieview
1301 East Ninth Street
Cleveland, OH 44114
Phone: 216-928-2918
Fax: 216-575-0911
Email: cpeer@walterhav.com

ATTORNEYS FOR DEFENDANT

Table of Contents

**TABLE OF AUTHORITIES** ........................................................................................ **II**

CASES ................................................................................................................ II

STATUTES/REGULATIONS ...................................................................................... II

**BRIEF** ............................................................................................................... **1**

INTRODUCTION ...................................................................................................... 1

FACTS .................................................................................................................. 2

    *A.*   *Seventh (7th) Grade* ................................................................................. 3

    *B.*   *Eighth (8th) Grade* ..................................................................................... 4

    *C.*   *Ninth (9th) Grade* ....................................................................................... 4

    *D.*   *Tenth (10th) Grade* ..................................................................................... 6

    *E.*   *Today* ........................................................................................................ 7

PROCEDURAL HISTORY ............................................................................................ 7

LAW AND ARGUMENT .............................................................................................. 8

STANDARD OF REVIEW ............................................................................................ 9

    *A.*   *O.A.C. 330-51-05(K)(14)(b)(i)* ...................................................................... 12

    *B.*   *Application of O.A.C. 3301-51-05(K)(14)(b)(i)(a)* ........................................... 13

**II.   O.A.C. 3301-51-05(K)(14)(B)(I)(A) IS IN CONFLICT WITH FEDERAL LAW** ............... **15**

**III.   THE PROCEDURAL SAFEGUARDS NOTICE DOES NOT INDICATE ANY GROUNDS MUST BE LISTED TO APPEAL A LOCAL HEARING OFFICER'S DECISION.** **19**

**IV.   PARENT INDICATED MULTIPLE GROUNDS FOR HER APPEAL TO THE STATE EDUCATIONAL AGENCY.** ...................................................................................... **23**

    *A.*   *Parent sought to exhaust her administrative remedies.* .................................. 25

**V.   THE STATUTE OF LIMITATIONS HAS NOT EXPIRED FOR PARENT'S NOR R.C.'S CLAIMS.** ............................................................................................................ **27**

**VI.   THE IHO'S DECISION SHOULD BE REVIEWED BECAUSE IT IS CAUSING HARM TO CHILDREN IN OHIO.** .................................................................................... **29**

CONCLUSION ....................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**

*Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877 (9th Cir. 2001)……………………………10

*Bd. of Educ. of Austintown Local Sch. Dist. v. Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities*, 66 Ohio St.3d 355, 366 (Ohio 1993)………………………………15

*Condon v. Haley*, 21 F. Supp. 3d 572 (D.S.C. 2014)…………………………………………………17

*Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329 (1944)…………………………………………13

*Bishop v. Children's Center For Developmental Enrichment*, 618 F.3d 533 (6th Cir 2010)…28,29

*Board of Educ. v. Rowley*, 458 U.S. 176 (1982)…….....................................................................9,30

*Burilovich v. Board of Educ. of Lincoln Consolidated Schools,* 208 F.3d 560 (6th Cir. 2000)…………………………………………………………………………………………………9,27

*Chambers v. St. Mary's School*, 82 Ohio St.3d 563 (1998)……………………………...1,2,12,13,14

*Courtyard Lounge v. Bur. Of Environmental Health*, 190 Ohio App.3d 25(10th Dist.)…………13

*Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100 (4th Cir. 1991)…………………………………10

*Ferguson v. Corinthian Colleges*, Inc., 733 F.3d 928, 298 Ed. Law Rep. 82 (9th Cir. 2013)…...17

*Fehrenback v. O'Malley*, 841 N.E.2d 350, 366 (Ohio Ct. App. 2005)…………………………28

*Florida Lime & Avocado Growers v. Paul* (1963), 373 U.S. 132………………………………18

*Fry v. Napoleon Community Schools*, slip opinion, 580 U.S.     , No. 15-497 (2017)………….….26

*Geston v. Olson*, 857 F. Supp. 2d 863 (8th Cir. 2013)……………………………………………17

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423 (6th Cir. 2016)………..26

*Glander*, 147 Ohio St. at 150……………………………………………………………………11

*In re Healthco Facilities, Inc.*, 79 Ohio App.3d 385, 391 (10th Dist.1992)………………………12

*Jones Metal Prod. Co. v. Walker*, 29 Ohio St. 2d 173, 176–77, 281 N.E.2d 1, 5 (1972)………..18

*Joshua A. v. Rocklin Unified Sch. Dist.* 391 F. App'x 692 (9th Cir.2009)…...............................10

*Kimani v. Holder*, 695 F.3d 666 (7th Cir. 2012)……………………………………………………17

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U. S. 645, 655 (1995) ……………………………………………………………………………17

*Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282 (2001)……...2

*Options Pub. Charter Sch. V. Howe*, 512 F. Supp. 2d 55 (D.D.C. 2007)…………………………10

*Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)……...28

*Pittston Coal Group v. Sebben*, 488 U.S. 105, 113 (1988)………………………………………23

*S.G. v. Dist. of Columbia*, 498 F. Supp. 2d 304 (D.D.C. 2007)……………………………………10

*Shore Reg'l Sch. Dist. v. P.S.*, 381 F.3d 194 (3d Cir. 2004)……………………………………10

*Stancourt v. Worthington City School Dist. Bd. of Edn.*, 164 Ohio App.3d 184, 2005-Ohio 5702…………………………………………………………………15

*State v. Eggeman*, 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-5177…………………14

*Testa v. Katt*, U.S.R.I.1947, 67 S.Ct. 810, 330 U.S. 386, 91 L.Ed. 967…………………………17

*Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389……………………………………………………11

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007)………………….........................19,21

## STATUTES/REGULATIONS

20 U.S.C. § 1400……………………………………………………………………………………15

20 U.S.C. § 1400(d)(1)……………………………………………………………………………29

20 U.S.C. § 1411(a)(1)……………………………………………………………………………15

20 U.S.C. § 1412(a)……………………………………………………………………………15

20 U.S.C. § 1412(a)(1)(A)……………………………………………………15
20 U.S.C. § 1412(a)(6)…………………………………………………………18
20 U.S.C. § 1415……………………………………………………………...14,20
20 U.S.C. § 1415(1)……………………………………………………………27
20 U.S.C. § 1415(a)…………………………………………………………15,22,23
20 U.S.C. § 1415(d)…………………………………………………………21,22,23
20 U.S.C. § 1415(i)(B)(2)(A)……………………………………………….....9
20 U.S.C. § 1415(i)(B)(2)(B)…………………………………………………10
20 U.S.C.  § 1415(i)(B)(2)(c)(ii)…………………………………………....7
20 U.S.C. § 1415(f)(3)(D)……………………………………………………24
20 U.S.C. § 1415(g)………………………………………………………12,17,18
42 U.S.C. § 1983……………………………………………8,23,24,27,28,29
42 U.S.C. § 12101……...…………………………………………………………8
34 C.F.R. § 300.301(c)…………………………………………………………19
34 C.F.R. § 300.507……………………………………………………………26
34 C.F.R. § 300.507(a)(2)………………………………………………………19
34 C.F.R. § 300.514…………………………………………………………16,17,26
34 C.F.R. § 300.516(b)…………………………………………………………19
34 C.F.R. § 300.516(e)…………………………………………………………26
O.A.C. 3301-51-05(A)…………………………………………………………21
O.A.C. 3301-51-05(B)…………………………………………………………21
O.A.C. 3301-51-05(I)(3)………………………………………………………20
O.A.C. 3301-51-05(I)(3)(e)(3)…………………………………………………20
O.A.C. 3301-51-05(K)(10)(f)…………………………………………………22
O.A.C. 3301-51-05(K)(10)(f)(ii)……………………………………………22
O.A.C. 3301-51-05(K)(10)(c)(ii)(b)…………………………………………17
O.A.C. 3301-51-05(K)(14)……………………………………………………1,28
O.A.C. 3301-51-05(K)(14)(b)………………………………………………1,16,23
O.A.C. 3301-51-05(K)(14)(b)(i)……………………………………………12
O.A.C. 3301-51-05(K)(14)(b)(i)(a)………………………………14,15,18,20,24,32
O.A.C. 3301-51-05(K)(15)(d)………………………………………………...19
R.C. 119.12……………………………………………………………1,13,15,30
R.C. 119.12(D)…………………………………………………………18,24
R.C. 2305.16……………………………………………………………27,28
R.C. 2506.04…………………………………………………………………13
R.C. 3323.05……………………………………………………………11,14,21
R.C. 3323.05(C)(2)(c)…………………………………………………………21
R.C. 3323.05(H)…………………………………………1,11,13,16,18,23,30

## BRIEF

**INTRODUCTION**

This action is an appeal of an administrative decision of a State Level Review Officer ("SLRO") from the Ohio Department of Education case number SE 3113-2015 against the Defendant, Nordonia Hills City Schools ("School" or "Nordonia"). In his decision, the SLRO dismissed the Appellant's, Angela Coleman's ("Parent"), appeal of the hearing local officer's ("IHO") decision because the "Parent has not set forth grounds of her appeal as required by O.A.C. Section 3301-51-05(K)(14)" in her Notice of Appeal to the Ohio Department of Education and thus the SLRO indicated he did not have subject matter jurisdiction over the case. SLRO Decision, p. 3. Prior to the dismissal of the appeal by the SLRO, the Parent sought to amend her Notice of Appeal, yet the SLRO indicated he felt he did not have the authority to allow such amendment, despite indicating that cases should be decided on their merits and "that leave to amend a pleading should be freely given when required in the interest of justice" because leave to amend was not indicated in the Ohio Administrative Code ("O.A.C.").[1] *Id.*

In reaching this conclusion, the SLRO failed to cite a single case to support his Decision and instead focused on O.A.C. Section 3301-51-05(K)(14)(b). The SLRO's reliance upon this statute is misplaced because O.A.C. 3301-51-05(K)(14)(b) does not confer the right to appeal; O.R.C. 3323.05(H) does. Furthermore, in 2010 the Ohio General Assembly amended O.R.C. 119.12 to remove the requirement that notices of administrative appeals must state the grounds of the appeal, indicating that the General Assembly had decided that imposing that burden on appellants was no longer the public policy of Ohio. *See Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 566 (1998)

---

[1] Yet, the SLRO considered a Motion to Dismiss by the School, even though such motion is not contemplated by the O.A.C. either.

("A legislative enactment, or statute, is initially introduced as a bill.  The introduction of a bill is a manifestation of public policy, which is determined primarily by the General Assembly.").  Thus, O.A.C. 3301-51-05(K)(14)(b) no longer represents a reasonable attempt to put the public policy announced by the General Assembly into action but, rather, now is directly in conflict with it.  *See Chambers* at 567; *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287 (2001) ("It is axiomatic that if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme.").

Additionally, the SLRO failed to consider that other SLRO's in Ohio have ruled that Notices of Appeal like the one in question were deemed sufficient, the O.A.C. is in conflict with federal and state law, the procedural safeguards notice does not indicate grounds are required for a parent to appeal an IHO's decision, the Parent listed multiple grounds for appeal in her Notice of Appeal, the statute of limitations has not expired, and harm is being done to families and students by not reviewing the IHO's faulty Decision.

**FACTS**

At the time of filing the original due process complaint, Parent's minor child, R.C., was fifteen years (15) old and was about to finish the ninth (9th) grade at Nordonia High School. R.C., an African-American child, has multiple disabilities, including migraines to the point they can cause blindness, depression, and post-traumatic stress disorder (formerly acute stress disorder). Parent filed a due process complaint on or about May 5, 2015. However, the School knew or should have known of R.C.'s disabilities much earlier and acted upon this knowledge as it was readily apparent he was struggling through all aspects of School since he was in trouble for numerous disciplinary events,

suffering academically, being bullied mercilessly, was arrested for an incident that occurred at School, was recommended for expulsion, was suicidal, and he and his Parent were asking for help. Unfortunately, help did not come from the School until the Parent filed a due process complaint seeking action for the School's IDEA, Americans with Disabilities, potential 42 U.S.C. §1983, and Section 504 of the Rehabilitation Act violations.  Eventually, after the filing of the administrative due process complaint, R.C. received an individualized education plan ("IEP") and did much better in School academically and with discipline.  However, the School was not R.C.'s proper educational placement because R.C. was not making any progress socially on his social-emotional IEP.  Thus, the Parent continued her pursuit of compensatory education for, amongst other things, the School's denial of a free appropriate education ("FAPE") and keeping him in an improper placement.

### A.  Seventh (7th) Grade

R.C. enrolled at Nordonia Middle school in the 7th grade in the 2012-2013 school year. Tr. 984.[2] He tranferred from a sixth-grade class demographic at Noble Academy that was approximately 75% black and 25% other, where he had been earning a 2.88 grade point average (GPA). Tr. 989; P. Ex. pg. 141. Nordonia had an approximate demographic of 11% percent black, 80% white and 10 % other when R.C. enrolled in its district. Tr. 989. During 7th grade, R.C. started having social issues that disrupted school, performing poorly, and received multiple disciplinary infractions. P. Ex. pg. 23, 101, 343, 433, 446.

Parent consistently checked up on R.C.'s progress at school as R.C. began missing or turning in incomplete assignments, and was made to sit by himself. P. Ex. pg. 16. These missing assignments

---

[2]  Plaintiff cites to her administrative due process hearing exhibits will be "P. Ex." followed by the page number ("pg.") that can be located on the top of the document.  Further, the Plaintiff cites to the underlying administrative due process hearing transcript by using "Tr." followed by the page number.

turned resulted in R.C. being disciplined. P. Ex. 309. As of October 2012, R.C. was failing two classes and had no grades above a C+. P. Ex. pg. 446. When Parent asked to observe R.C. at school due to her concerns, the teachers asked if it was "really necessary." P. Ex. pg. 19. Although Parent kept checking on R.C. at school, R.C. continued to be harassed, bullied, and discriminated against, causing him to act out and be further disciplined. P. Ex. pgs. 12, 55-69, 94, 273, 315, 343, 344

Parent then notified the School R.C. suffered migraines to the point they caused blindness in May 2013, discussing his missing school and poor grades, however, the school did nothing about it. P. Ex. pgs. 292, 322. R.C. continued to have disciplinary issues during the 7th grade. P. Ex. pg. 433.

### B.  Eighth (8th) Grade

R.C.'s problems continued into the 8th grade at Nordonia, where he continued to be subjected to racial slurs, was disruptive in school, was in numerous physical altercations, and was disciplined through both in school suspensions (ISS) and out of school suspensions (OSS). P. Ex. Pgs. 9, 39, 42, 43, 44, 47, 48, 65-66, 79, 89, 99, 100, 276. Even R.C.'s teachers expressed concern about his attitude, behavior and mood in the 8th grade. P. Ex. pgs. 277, 283, 294. During this 8th grade year, R.C. was placed in an intervention group, and received at least nine (9) days of out of school suspension and six (6) days in school suspension. P. Ex. pgs. 341-2, 560. Unfortunately, although the Opportunity Room is similar to an in-school suspension setting, it is unclear how many times R.C. was sent there as the school did not record them all. Tr. 186, 225-227. What is clear, however, is R.C.'s GPA dropped as low as 1.0 in the 8th grade, and the school failed to track his attendance correctly, showing only half a day's absence when it is clear he was out of school for at least nine days due to OSS. P. Ex. pg. 131.

### C.  Ninth (9th) Grade

At Nordonia City schools, a student's file doesn't contain all the students record from preceding years. Tr. 804. Therefore, Nordonia High School claimed it was unaware of R.C.'s prior disciplinary

issues, social issues, and history of school disruptions and suspensions when he attended the 9th grade. *Id.* R.C. was placed in the Phoenix Alternative Learning Environment (PALE), the high school form of ISS, as well as other suspensions due to school disruptions and physical altercations. Tr. 451-453; P. Ex. pgs. 1-4.. PALE is a small room environment used as an intervention to learning as well as for ISS. Tr. 452, 490, 536, 648.

      R.C. attended the John's Hopkins University Adolescent Depression Awareness Program presented by Deborah Wallace, the School's alcohol, tobacco, and other drug and violence prevention and intervention program coordinator during the last week of February 2015. Tr. 1397-1403.  R.C. met with Ms. Wallace twice to discuss his belief he met the criteria of the mental health issues she was discussing and was trying to figure out why he felt angry most of the time. Tr. 1400, 1408, 1410. Ms. Wallace had been aware of R.C.'s physical altercations and violence in the school district through emails. P. Ex. pgs. 773-783. Despite R.C. coming to her to discuss his irritability, anger, fitting the depression profile, and having knowledge of his past physical confrontations, Ms. Wallace did not act to advise other personnel or to have R.C. screened for disability. Tr. 1408.

      On March 2, 2015, R.C. had yet another physical altercation and disruption of school leading him to be suspended, recommended for expulsion, removed from the general student population, placed in the school's digital program, and prohibited from attending any school functions or being on school property. P. Ex. pgs. 148-150, 773-778. On March 4, 2015, R.C. was again suspended for another 10 days and recommended for expulsion for allegedly making terroristic threats to shoot people at school. P. Ex. Pgs. 5-6. 015, R.C. Parent then requested an evaluation for an IEP (Individualized Education Plan) on March 24, 2015. P. Ex. pg. 172. The School denied a suspicion of a disability for R.C. and refused an initial evaluation on April 16, 2015, while at the same time acknowledging R.C. suffers from asthma and migraines. P. Ex. pgs. 163-4.  The School then, on May 6, 2015 proposed to do

an evaluation. P. Ex. pg. 165. Parent filed her due process May 7, 2015 and amended the complaint on May 13, 2015.

The district referred R.C. for an evaluation on June 1, 2015, recognizing he had been out of school for more than 15 days due to disciplinary events. P. Ex. pgs. 450-451. Despite, knowing R.C. had been out of school for more than 15 days, the evaluation was not completed until June 24, 2015. The School's IEP team decided more information was needed to determine if R.C. qualified for an IEP due to a disability so a meeting was set for July 30, 2015 to allow for R.C. to be screened by Dr. Depolo at Kidslink. P. Ex. pgs. 485-6, 767-8. The IEP team found R.C. eligible for an IEP. P. Ex. pgs. 759-761.

### D. Tenth (10th) Grade

The School developed an IEP for R.C. on August 20, 2015, P. Ex. pgs. 507-525. The IEP created for R.C. contained only one goal addressing behavior, although his disability was based on social, emotional, anxiety, and peer-related issues. P. Ex. pg. 513. At the time the IEP was drafted, Dr. DePolo, an independent child psychologist, felt a label of Emotional Disturbance (ED) due to a disability of Post-Traumatic Stress Disorder (PTSD) would be too stigmatizing for R.C. and placed him the category of Other Health Impairment (OHI). Tr. 614. Dr. DePolo testified she believed R.C. was not improving socially at all during the tenth grade and kept peers at a distance. Tr. 613.

Although R.C.'s grades improved and he had no disciplinary incidents in the tenth grade, he was not interacting socially or going out and doing a lot of things. P. Ex. Pgs. 557-558; Tr. 613. After implementing the IEP, R.C. made the merit roll with a GPA of 3.286, a 2-point improvement from his lowest GPA in 8th grade and 1.2 improvement from 9th grade, evidencing the previous denial of FAPE. P. Ex. pgs. 715-716.

### E.  Today

Should this Honorable Court reverse the SLRO's decision and allow the appeal to continue, Plaintiff will seek to supplement the record when it is heard before the Court with evidence pursuant to 20 U.S.C. 1415(i)(B)(2)(c)(ii) of R.C.'s educational, social and emotional success in his current placement that will further illustrate why his placement at the Defendant's School was improper and how he was denied FAPE due to the improper placement and failure to provide an IEP until the tenth (10th) grade.

**PROCEDURAL HISTORY**

Parent filed a due process complaint on May 5, 2015 against Defendant, Nordonia Hills City Schools, seeking relief from Nordonia Hills City Schools' failure to find R.C. to be a child with disabilities pursuant to the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("504"), and the Americans with Disabilities Act; failure to provide a free and appropriate public education ("FAPE"); failure to conduct a manifestation determination review prior to a change in placement; failure to protect R.C. from or to address the bullying concerns; and, failure to address the racial intimidation and/or discrimination. Parent amended the due process complaint in September 2015 alleging R.C. has been denied a FAPE under 504 and IDEA; the School violated child find under 504 and IDEA; R.C. was unlawfully retaliated against under 504 and IDEA; R.C. has been subjected to unwanted bullying and harassment; R.C. has been denied educational opportunities; R.C. did not receive a manifestation determination prior to being suspended for more than ten days and recommended for expulsion; and, R.C.'s current educational placement is not proper. Additionally, Parent rescinded proposed remedies for an evaluation to be completed, noting one had been completed recently.

The administrative due process hearing spanned approximately eight (8) partial days, including January 12, 13, 20, 21, 22, 25, 30, and March 1, 2016. The School filed a Motion to Dismiss on December 18, 2015 that was denied.  The School then moved for a directed verdict at the close of Parent's case in chief, which the IHO again denied. As discussed below, the IHO, using the improper standard of law, issued her Final Decision on May 2, 2016, finding in favor of the School on all issues.

Parent timely appealed the IHO's decision on June 15, 2016, using the grounds for appeal necessary to take an administrative appeal to a court of common pleas. Specifically, Parent's Notice of Appeal stated "[t]he Decision dated May 2, 2016, is not supported by reliable, probative, and substantive evidence and is not made in accordance with existing law.  As such, the Petitioner seeks a full de novo review of the issues decided, all legal conclusions, and all findings of fact, including Hearing Officers decision regarding the statute of limitations. Petitioners continue to seek exhaustion under the IDEA in order to pursue their claims under the American with Disabilities Act (42 U.S.C. § 12101), 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 and any other applicable Federal or State provisions." The Ohio Department of Education (ODE) appointed State Level Review Officer (SLRO) Robert Mues to hear the appeal on June 16, 2016.

The School moved to dismiss the appeal for failure to state grounds and lack of subject matter jurisdiction on June 21, 2016. Although Parent believed it was not a matter of subject matter jurisdiction, she responded to the motion to dismiss, or, in the alternative, moved to amend the notice of appeal on June 26, 2016. The School further opposed Parent's response or motion to amend the appeal on July 1, 2016. The SLRO dismissed the Plaintiff's appeal on July 7, 2016.

## **LAW AND ARGUMENT**

**The SLRO erred by dismissing the Parent's appeal
for failure to list any specific grounds in her Notice of Appeal.**

**STANDARD OF REVIEW**

This appeal is brought pursuant to 20 U.S.C. 1415(i)(B)(2)(A), which states:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. 1415(i)(B)(2) continues with the following:

> (B) Limitation.
> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.
> (C) Additional requirements.
> In any action brought under this paragraph, the court—
> (i) shall receive the records of the administrative proceedings;
> (ii) shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

**A. This Court should conduct a de novo review because the matter in dispute is procedural in nature, no educational expertise is required to decide the issue at hand, and the SLRO fails to adequately support his legal conclusion.**

The Court is required to make an "independent decision" based on a preponderance of the evidence while giving "due weight" to the findings of the state administrative agency. *Board of Educ. v. Rowley*, 458 U.S. 176, 205, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). "A court should defer to the administrative findings only when educational expertise is relevant to those findings and the decision is reasonable. By so deferring, "due weight" will have been given to the state administrative proceedings. We also reiterate that, when there is a conflict between the holdings of the local and state hearing officers, the court must defer to the state hearing officer's decision in reviewing the record on

appeal."[3] *Burilovich v. Board of Educ. of Lincoln Consolidated Schools,* 208 F.3d 560, 567 (6th Cir. 2000), *cert. denied,* 531 U.S. 957, 121 S. Ct. 380, 148 L. Ed. 2d 293 (2000).  "[T]he weight due will vary, depending on whether the court is reviewing procedural or substantive matters and whether educational expertise is essential to the administrative findings." *Id.*

Courts have varied in their interpretation and application of the Supreme Court's "due weight" standard.  However, the general theme is to provide a 1) presumptive deference to the hearing officer's factual findings, particularly with regard to credibility of witnesses, and 2) de novo review for the hearing officer's legal conclusions.  *See, e.g., Shore Reg'l Sch. Dist. v. P.S.*, 381 F.3d 194 (3d Cir. 2004); *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877 (9th Cir. 2001); *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100 (4th Cir. 1991).  A hearing officer's legal conclusion that fails to reference the supporting facts may not receive judicial deference.  *Joshua A. v. Rocklin Unified Sch. Dist.*, 49 IDELR ¶ 249 (E.D. Cal. 2008), *aff'd*, 391 F. App'x 692 (9th Cir. 2009).   Additionally, the hearing officers' legal findings need support in the record.  *See, e.g., S.G. v. Dist. of Columbia*, 498 F. Supp. 2d 304 (D.D.C. 2007); *Options Pub. Charter Sch. V. Howe*, 512 F. Supp. 2d 55 (D.D.C. 2007) (entire lack of factual findings nullified IHO's decision).

Clearly an issue regarding subject matter jurisdiction is legal in nature and does not require any educational expertise.  Additionally, the SLRO failed to cite a single case to support his Decision and did not examine or consider any other precedent from an SLRO in Ohio.  In a separate appeal to a different SLRO, the SLRO denied a motion to dismiss despite no grounds for appeal being listed in the Notice of Appeal.  *See* SE 3042-2041 attached hereto as exhibit 2.  Additionally, in yet another matter, one which the same counsel for this Defendant was a part of, an SLRO ruled the statement in a Notice

---

[3] In Ohio, the local hearing officer is called an Impartial Hearing Officer and the state review officer is called a State Level Review Officer.

of Appeal regarding an IHO's decision "not [being] supported by reliable, probative, and substantive evidence and is not made in accordance with existing law" to be a ground and overruled that school's Motion to Dismiss.  *See* SE 3156-2015 and SE 3168-2015 attached hereto as Exhibit 3.  These were the proper outcomes under the law.

I.     **Ohio law provides the parties of an administrative due process hearing the right to appeal an IHO's decision to an SLRO without listing grounds for appeal.**

In Ohio, O.R.C. 3323.05 requires the state board of education to "establish procedures *to ensure that children with disabilities and their parents are guaranteed procedural safeguards* under this chapter with respect to a free appropriate public education."  Emphasis added.  O.R.C. 3323.05 sets forth specific procedures that the state board of education *must* put into place, including the right to appeal the decision of an independent hearing officer to a state level review officer.  This right is enshrined in O.R.C. 3323.05(H), which provides:

> [t]he procedures shall include * * * [a]n opportunity for any party aggrieved by the findings and decision rendered in a hearing under division (G) of this section to appeal within forty-five days of notification of the decision to the state board, which shall appoint a state level officer who shall review the case and issue a final order.  The state level officer shall be appointed and shall review the case in accordance with standards and procedures adopted by the state board.

Thus, O.R.C. 3323.05(H) is the statute establishing the right to appeal.  *See also* 20 U.S.C. 1415(g).  It is well established that, "'[w]here a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred.'"  *Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, at ¶ 19, quoting *Glander,* 147 Ohio St. at 150.  Notably, however, the only requirement in O.R.C. 3323.05(H) regarding the notice of appeal is that it must be filed within 45 days of the hearing officer's decision.  It does not set forth *any* requirements for the contents of a notice of appeal.  Thus, merely filing the appeal is sufficient to "adhere to the conditions * * * imposed" by the

11

statute conferring the right of appeal.  Therefore, the SLRO was mistaken to conclude that the Parent

did not perfect her Notice of Appeal.

### A.  O.A.C. 330-51-05(K)(14)(b)(i)

In reaching the conclusion that Appellants' appeal should be dismissed, the SLRO relied almost

exclusively upon the provisions of O.A.C. 3301-51-05(K)(14)(b)(i), which provides that

> [a]ny party aggrieved by the findings and decision in the hearing may
> appeal the findings and decision in writing to the Ohio department of
> education within forty-five days of receipt of the hearing decision.
> (a) The notice shall set forth the order appealed and the grounds of the
> party's appeal; and
> (b) A party filing an appeal shall notify the other party of the filing of the
> appeal.

As noted above, the SLRO fails to cite any case law in his decision or for his next proposition:

that administrative regulations must similarly be followed to perfect an appeal.  In fact, Ohio's Tenth

District Court of Appeals has specifically held to the contrary, concluding that a party's failure to follow

a provision of the administrative code does not deprive the agency of jurisdiction.  *See In re Healthco*

*Facilities, Inc.*, 79 Ohio App.3d 385, 391 (10th Dist.1992).

The SLRO's decision ignores the important distinction between statutes passed by the General

Assembly and administrative rules adopted by a state agency.  "A legislative enactment, or statute, is

initially introduced as a bill.  The introduction of a bill is a manifestation of public policy, which is

determined primarily by the General Assembly." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, at

566 (1998).  The bill is then subjected "to debate, discussion, and amendment prior to being put to a

vote." *Id*. The bill must then be passed by a majority of both houses of the General Assembly, the

members of which "are accountable to their constituents because they are elected to office."  *Id*. "The

legislative process and accountability are the cornerstones of the democratic process which justify the

General Assembly's role as lawmaker." *Id*. at 567.

By contrast, "[a]dministrative agencies may make only 'subordinate' rules." *Id.*, quoting *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 342-343 (1944).  The purpose of the administrative rules is to *effectuate* the public policy that has been declared by the General Assembly. *Chambers* at 567.  Thus, the effect of administrative rules is inherently different from a statute as the latter makes public policy while the former merely attempts to put it into practice, making any analogies between the two questionable at best.  Furthermore, as noted above, O.A.C. does not "confer[] the right of appeal * * *[;]" O.R.C. 3323.05(H) does.[4]  Therefore, any failure to comply with requirements of O.A.C. 3301-51-05(K)(14)(b)(i)(a) is not jurisdictional in the same way that failure to follow the requirements of O.R.C. 119.12 or O.R.C. 2506.04 would be.[5]  Thus, to the extent Appellants' notice of appeal did not comply with O.A.C. 3301-51-05(K)(14)(b)(i)(a), that would not be a jurisdictional defect.  Therefore, the SLRO erred as matter of law when he reached the opposite conclusion.

### B.  Application of O.A.C. 3301-51-05(K)(14)(b)(i)(a)

The requirements in O.A.C. 3301-51-05(K)(14)(b)(i)(a) is a vestigial remnant of former O.R.C. 119.12, which used to require an appellant to specifically state the grounds for its administrative appeal and is the state used by a party seeking to appeal an administrative IDEA due process complaint to Ohio's state courts.  *See Courtyard Lounge v. Bur. Of Environmental Health*, 190 Ohio App.3d 25, 2010-Ohio-4442, ¶ 6 (10th Dist.).  Effective September 13, 2010, however, the General Assembly amended the statute and eliminated the requirement.  *See id.* at ¶ 8.  In other words, the General Assembly made the decision that such a stringent requirement for a party to appeal an agency's

---

[4] Parent filed her Notice of Appeal citing 3323.05(H), a copy of same is attached hereto as Exhibit 1.

[5] The O.A.C. expressly allows a party to amend a due process complaint and it is not jurisdictional.  O.A.C. 3301-51-05(K)(e)(iv).

decision was no longer sound public policy. *Accord Chambers*, 82 Ohio St.3d 563 at 566. This, of course, means that O.A.C. 3301-51-05(K)(14)(b)(i)(a) no longer effectuates the public policy declared by the General Assembly; rather, it now directly undermines it. *See Chambers* at 567. Nor can it be argued that that O.A.C. 3301-51-05(K)(14)(b)(i)(a) is a reasonable interpretation of the public policy announced by the General Assembly as it makes the appeal from a hearing officer to an SLRO *more* burdensome on a parent than appealing from a decision of an SLRO to a court. *See* O.R.C. 3323.05(H) (providing for an appeal of a decision of an SLRO pursuant to O.R.C. 119.12). It defies reason to have this rule in place when the General Assembly has repudiated it for all similar appeals to the court of common pleas. *See, e.g., Conrad*, 92 Ohio St.3d at 287.

This is especially true considering the overarching legislative mandate present in O.R.C. 3323.05 and 20 U.S.C. 1415(a): "to ensure that children with disabilities and their parents are guaranteed procedural safeguards * * * with respect to a free appropriate public education." It can hardly be said that imposing a higher burden on children and parents to appeal from a hearing officer to a state level review officer than any other person in Ohio needs to appeal a decision of a state agency to a court of common pleas is reasonably carrying out this legislative edict. To extent O.A.C. 3301-51-05(K)(14)(b)(i)(a) has any legitimate effect at this point, it should not be applied to undermine the access of children and their parents to the procedures in O.R.C. 3323.05 and 20 U.S.C. 1415. Not only does that go against the very purpose of those statutes, it goes against the one of the foundational principles of the Ohio judicial system: A case should be decided on its merits, not technicalities. *See, e.g., State v. Eggeman*, 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-5177, ¶ 6. It is important to remember that parents must often navigate these procedures without the aid of an attorney and that pro se litigants must abide by the same standards as attorneys. *See Id.* Thus, a state level review officer should not be permitted to dismiss a case under this rule, which no longer reflects the public policy of

Ohio, except under the most exceptional of circumstances. *See Stancourt v. Worthington City School Dist. Bd. of Edn.*, 164 Ohio App.3d 184, 2005-Ohio-5702, ¶ 86  (10th Dist.) (holding that, although a hearing officer may dismiss a case, it should do so "only with great circumspection and when the conduct of a party is so negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds for a dismissal with prejudice").

## II.   O.A.C. 3301-51-05(K)(14)(b)(i)(a) is in conflict with federal law.

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400-1482 *et seq.*, offers state governments federal funding to help educate children with disabilities, and in exchange for those funds, states must provide a free appropriate public education ("FAPE") to every eligible child.  20 U.S.C. 1411(a)(1) and 1412 (a)(1)(A).  Ohio has opted to receive IDEA funds.  *Bd. of Educ. of Austintown Local Sch. Dist. v. Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities*, 66 Ohio St.3d 355, 366 (Ohio 1993).

"A State is eligible for assistance under this subchapter for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions… Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title."  20 U.S.C. 1412(a)-(a)(6).  As part of family's procedural safeguards, 20 U.S.C. 1415(g) requires state educational agencies to review any decision of a local hearing officer by a party seeking said review.[6]  20 U.S.C. 1415(g) provides:

> (1) In general.
> If the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency.
> (2) Impartial review and independent decision.

---

[6] This is only in states that have a two-tiered system, like Ohio.  *See* Analysis of Comments and Changes to 2006 IDEA Part B Regulations, 71 Fed. Reg. 46,707 (2006).

The State educational agency shall conduct an impartial review of the findings and decision appealed under paragraph (1). The officer conducting such review shall make an independent decision upon completion of such review.

The implementing regulations for the IDEA at 34 C.F.R. §300.514 indicates:

(a) Finality of hearing decision. A decision made in a hearing conducted pursuant to §§300.507 through 300.513 or §§300.530 through 300.534 is final, except that any party involved in the hearing may appeal the decision under the provisions of paragraph (b) of this section and §300.516.
(b) Appeal of decisions; impartial review.
(1) If the hearing required by §300.511 is conducted by a public agency other than the SEA, any party aggrieved by the findings and decision in the hearing may appeal to the SEA.
(2) If there is an appeal, the SEA must conduct an impartial review of the findings and decision appealed. The official conducting the review must--
(i) Examine the entire hearing record;
(ii) Ensure that the procedures at the hearing were consistent with the requirements of due process;
(iii) Seek additional evidence if necessary. If a hearing is held to receive additional evidence, the rights in §300.512 apply;
(iv) Afford the parties an opportunity for oral or written argument, or both, at the discretion of the reviewing official; (v) Make an independent decision on completion of the review; and
(vi) Give a copy of the written, or, at the option of the parents, electronic findings of fact and decisions to the parties.
(d) Finality of review decision. The decision made by the reviewing official is final unless a party brings a civil action under §300.516. (Authority: 20 U.S.C. 1415(g) and (h)(4), 1415(i)(1)(A), 1415(i)(2)).

Ohio Revised Code 3323.05(H), which provides the right for a party to appeal a local hearing officer's decision, is not in conflict with 20 U.S.C. 1415(g) or 34 C.F.R. §300.514.[7]  Whereas, O.A.C. 3301-51-05(K)(14) suddenly requites a party to list grounds, which is in direct conflict with O.R.C. 3323.05(H), 20 U.S.C. 1415(g) and 34 C.F.R. §300.514.  O.A.C. 3301-51-05(K)(14)(b) indicates:

(b) Appeal of decisions; impartial review
(i) Any party aggrieved by the findings and decision in the hearing may appeal the findings and decision in writing to the Ohio department of education within forty-five days of receipt of the hearing decision.
(a) The notice shall *set forth the order appealed and the grounds* of the party's appeal; and

---

[7] O.R.C. 3323.05(H) is quoted above.

(b) A party filing an appeal shall notify the other party of the filing of the appeal.

Emphasis added.

It is a well-known legal principal that federal law trumps state law when the two conflict.

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.  The central premise of the Supremacy Clause is that federal law is superior to state law.  *Ferguson v. Corinthian Colleges*, Inc., 733 F.3d 928, 298 Ed. Law Rep. 82 (9th Cir. 2013).  State laws that run contrary to federal constitutionally protected rights of individuals cannot be allowed to stand.  *Condon v. Haley*, 21 F. Supp. 3d 572 (D.S.C. 2014).  The United States Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, anything in the Constitution or laws of any state to the contrary notwithstanding.  *Testa v. Katt,* U.S.R.I.1947, 67 S.Ct. 810, 330 U.S. 386, 91 L.Ed. 967.  The Supremacy Clause makes federal law binding on all state actors.  *Kimani v. Holder*, 695 F.3d 666 (7th Cir. 2012). While not the source of any federal rights, the Supremacy Clause protects federal rights by giving them priority when they conflict with state laws.  *Geston v. Olson*, 857 F. Supp. 2d 863 (D.N.D. 2012), *stay pending appeal denied*, (Aug. 1, 2012) and *judgment aff'd*, 729 F.3d 1077 (8th Cir. 2013).

The preemption doctrine prevents states from imposing requirements that differ from the requirements of the IDEA.  The preemption doctrine is based on the supremacy clause in the Constitution, applies at least if the conflict, and Congressional intent for supplanting state law, is "clear and manifest." *See*, e.g., *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U. S. 645, 655 (1995).  "'The test of whether both federal and state * * * (laws) may operate, or the state * * * (law) must give way, is whether both * * * (laws) can be enforced without impairing the federal superintendence of the field, not whether they are aimed

17

at similar or different objectives.' *Florida Lime & Avocado Growers v. Paul* (1963), 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248.  Thus, if enforcement of the state law would invalidate the federal policy, or impair the exercise of federal power, the state law is inconsistent within the meaning of Section 2000h-4, Title 42, U.S. Code, and is preempted." *Jones Metal Prod. Co. v. Walker*, 29 Ohio St. 2d 173, 176–77, 281 N.E.2d 1, 5 (1972).

In the instant matter, O.A.C. 3301-51-05(K)(14)(b)(i)(a) impairs the exercise of and is inconsistent with the federal provisions of the IDEA which are clear and manifest. The IDEA expressly allows for state variation in some circumstances as it does for the limitations periods and evaluations. 34 C.F.R. §§ 300.507(a)(2), 300.516(b) and 300.301(c).  However, no such variation is authorized regarding the IDEA's procedural safeguards and 20 U.S.C. 1412(a)(6) clearly conditioned the receipt of federal funds to the states upon children with disabilities *and their parents* being afforded the procedural safeguards contained in 20 U.S.C. 1415, which includes the right to appeal a local hearing officer's decision to a state level review officer without listing any grounds.

Ohio's Administrative Code is creating a barrier for families to receive meaningful due process by imposing stricter requirements to receive an appeal of an IHO's decision than what the federal statutes and regulations allow and even the requirements that would be imposed upon parents if they were appealing a state level review officer's decision to Ohio's state courts.  *See* O.R.C.119.12(D) (indicating no grounds needs to be indicated on the notice of appeal other than the ground that "the agency's order is not supported by reliable, probative, and substantial evidence and is not in accordance with law").

Considering the IDEA's administrative due process hearings are intended to be parent friendly proceedings where no attorneys are required to be retained, no rules of evidence apply, no rules of civil procedure apply, and the rules regarding the timing and location of the hearing are at the convenience

18

of the families, it is clear and manifest one intent of the IDEA is to provide conflict dispute mechanisms in an easily accessible manner, not to provide anachronistic barriers to access them. *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 527, 127 S. Ct. 1994, 2002, 167 L. Ed. 2d 904 (2007) (holding "[t]he statute sets forth procedures for resolving disputes in a manner that, in the Act's express terms, contemplates parents will be the parties bringing the administrative complaints.  In addition to the provisions we have cited, we refer also to § 1415(b)(8) (requiring a state educational agency to "develop a model form to assist parents in filing a complaint"); § 1415(c)(2) (addressing the response an agency must provide to a "parent's due process complaint notice"); and § 1415(i)(3)(B)(i) (referring to "the parent's complaint");" *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 61, 126 S. Ct. 528, 536–37, 163 L. Ed. 2d 387 (2005) ("IDEA hearings are deliberately informal and intended to give ALJs the flexibility that they need to ensure that each side can fairly present its evidence.  IDEA, in fact, requires state authorities to organize hearings in a way that guarantees parents and children the procedural protections of the Act.); O.A.C. 3301-51-05(K)(15)(d) ("[e]ach hearing and each review involving oral arguments must be conducted at a time and place that is reasonably convenient to the parents and child involved.").

Therefore, O.A.C. 3301-51-05(K)(14)(b)(i)(a) is in conflict with federal and state law and must be construed to be invalid as it violates the Supremacy Clause of the Unites States Constitution.

### III.    The procedural safeguards notice does not indicate any grounds must be listed to appeal a local hearing officer's decision.

There is no dispute that the Parent received the procedural safeguards notice, entitled "Who's IDEA is This?", from the School.  *See* IHO's Decision at pg. 9.  However, the problem with the procedural safeguards notice is the incompleteness of it, since the notice fails to indicate the heightened standard for a parent to appeal a hearing officer's decision to a state level review officer contained in

O.A.C. 3301-51-05(K)(14)(b)(i)(a). 20 U.S.C. 1415(d), procedural safeguards notice, provides, in pertinent part:

> (A)Copy to parents- A copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents only 1 time a year, except that a copy also shall be given to the parents—
> (i) upon initial referral or parental request for evaluation;
> (ii) upon the first occurrence of the filing of a complaint under subsection (b)(6); and
> (iii) upon request by a parent.
> (2) Contents- The procedural safeguards notice shall include *a full explanation of the procedural safeguards*, written in the native language of the parents (unless it clearly is not feasible to do so) and written in an easily understandable manner, available under this section and under regulations promulgated by the Secretary relating to—
> (A) independent educational evaluation;
> (B) prior written notice;
> (C) parental consent;
> (D) access to educational records;
> (E) *the opportunity to present and resolve complaints*, including—
> (i) the time period in which to make a complaint;
> (ii) the opportunity for the agency to resolve the complaint; and
> (iii) the availability of mediation;
> (F) the child's placement during pendency of due process proceedings;
> (G) procedures for students who are subject to placement in an interim alternative educational setting;
> (H) requirements for unilateral placement by parents of children in private schools at public expense;
> (I) *due process hearings*, including requirements for disclosure of evaluation results and recommendations;
> (J) *State-level appeals (if applicable in that State)*;
> (K*) civil actions, including the time period in which to file such actions*; and
> (L) attorneys' fees.

Emphasis added. O.A.C. 3301-51-05(I)(3) is identical to 20 U.S.C. 1415(d) except the O.A.C. has one addition. O.A.C. 3301-51-05(I)(3)(e)(3) indicates there must be an explanation about "the difference between the due process complaint and the state complaint procedures, including the *jurisdiction* of each procedure, *what issues may be raised*, *filing* and *decisional timelines*, and *relevant procedures*."

Emphasis added. Unfortunately, as discussed below, Ohio's procedural safeguards notice does not contain the required information.

"The IDEA also sets up general procedural safeguards that protect the informed involvement of parents in the development of an education for their child. *See*, *e.g.*, § 1415(a) (requiring States to "establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education")."  *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524, 127 S. Ct. 1994, 2000, 167 L. Ed. 2d 904 (2007).

O.A.C. 3301-51-05(A) requires "[e]ach school district [to] adopt and implement written policies and procedures approved by the Ohio Department of Education, office for exceptional children, to ensure that children with disabilities and their parents are provided procedural safeguards." O.R.C. mandates the "state board of education shall establish procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards under this chapter with respect to a free appropriate public education." O.R.C. 3323.05.  Ohio law also requires schools provide "[a] statement that the parents of a child with a disability have protection under the procedural safeguards and, if the notice is not in regard to an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained." O.R.C. 3323.05(C)(2)(c).

Ohio creates and distributes the notice to schools and schools provide them to families.  O.A.C. 3301-51-05(B); *See also* 20 U.S.C. 1415(a) and 20 U.S.C. 1415(d). Federal law places a strong emphasis on ensuring families receive a copy of the procedural safeguards from the state or school. The procedural safeguards Ohio provides to families does not indicate that a party is required to list grounds for an appeal when seeking a review of a hearing officer's decision.  *See* Ohio's procedural safeguards notice, entitled "Whose IDEA is this Now?" attached hereto as Exhibit 4.  Specifically, Ohio's procedural safeguards indicates:

> ***What can I do if I disagree with the hearing officer's decision?***
> If you or the school district disagree with the decision made by a hearing officer, either

of you may appeal to the Ohio Department of Education in writing within 45 days of learning of the decision.

Send your original appeal (not a photocopy) by mail to:

Ohio Department of Education Office for Exceptional Children Procedural Safeguards Section *See pages 29 and 30 for contact information.*

Send a copy of your appeal to the superintendent of the school district.

When the Ohio Department of Education receives your appeal, it will appoint a state-level review officer (SLRO) to conduct an impartial review of the hearing officer's decision. The state-level review officer:

Examines the entire due process hearing record;

Ensures that the hearing procedures followed the requirements of due process;

Seeks additional evidence, if necessary. If a hearing is held to receive additional evidence, your due process hearing rights apply;

May grant time extensions if you or the school district make a request; and

Makes an independent decision after completing the review.

For information about your due process hearing rights, see the earlier question "*If the due process hearing goes forward, what are my rights?"*

Within 30 days after the Ohio Department of Education receives a request for an appeal, the department will ensure that:

An independent decision is reached in a state- level review hearing; and

If you choose, a written copy or word-for- word electronic record of the findings and decision is mailed to all parties.

The 30-day timeline for state-level review hearing can be extended if either party requests an extension and the extension is granted in writing by the state-level review officer.

*Id*. Pgs. 44-45.  O.A.C. 3301-51-05(K)(10)(f) indicates that there are exceptions to the timelines for requesting a hearing if the School's "withholding of information from the parent was required under this rule to be provided to the parent."  O.A.C. 3301-51-05(K)(10)(f)(ii); 20 U.S.C. 1415(f)(3)(D).  Ohio's procedural safeguards do not include information the School was required to provide the Parent pursuant to state and federal law.

Dismissing the Parent's appeal when the procedural safeguards notice does not adhere to federal or state law, or accurately portray the requirements for a party to appeal a hearing officer's decision when due process hearings are contemplated to be litigated by pro se parties, goes against the spirit and intent of the IDEA.  *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 527, 127 S. Ct. 1994, 2002, 167 L. Ed. 2d 904 (2007).  Additionally, since the School failed to

22

provide information it was required to provide pursuant to state and federal law, equity requires the Parent to be able to continue her appeal to the SLRO. Therefore, the SLRO's decision must be reversed so the Parent can continue forward with her appeal of right.

### IV. Parent indicated multiple grounds for her appeal to the state educational agency.

Assuming arguendo, that state or federal law requires a party to indicate grounds in a notice of appeal for an administrative IDEA due process state level review, the Parent in this matter listed multiple grounds for appeal, and as such, the SLRO should have went forward with the state review.[8]

Dictionary definitions of terms should be followed unless Congress has provided a specific definition. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 113 (1988). The Meriam-Webster defines the relevant form of "ground" as "a basis for belief, action, or argument- *ground for complaint* —often used in plural *sufficient grounds for divorce."* Merriam-Webster Online Dictionary. 2017. https://www.merriam-webster.com/dictionary/ground (11 March 2017).

Parent filed her Notice of Appeal regarding the local hearing officer's decision On June 15, 2016, indicating in part:

> Now comes the Petitioner-Appellant, by and through Undersigned Counsel, who hereby submits this Notice of Appeal of the Decision of the Due Process Hearing in the above captioned matter under Revised Code Section 3323.05(H) and Rule 3301-51-05(K)(14)(b) of the Administrative Code.
>
> The Decision dated May 2, 2016, is not supported by reliable, probative, and substantive evidence and is not made in accordance with existing law. As such, the Petitioner seeks a full de novo review of the issues decided, all legal conclusions, and all findings of fact, including Hearing Officers decision regarding the statute of limitations. Petitioners continue to seek exhaustion under the IDEA in order to pursue their claims under the American with Disabilities Act, 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 and any other applicable Federal or State provisions.

---

[8] At no place does O.A.C. 3301-51-05(K)(14)(b)(i)(a) indicate the specificity required when listing grounds nor does it require the party filing the appeal to send the grounds for the appeal to the other party.

This Notice of Appeal provides multiple bases for relief, action, or argument.

The first basis for relief, action, or argument is the Decision dated May 2, 2016, is not supported by reliable, probative, and substantive evidence and is not made in accordance to existing law.  O.R.C. 119.12(D) is the statute that provides parties the right to appeal an SLRO's decision in Ohio courts of common pleas and indicates what requirements the Notice of Appeal would need to contain.  O.R.C. 119.12(D) provides, in pertinent:

> The notice of appeal may, but need not, set forth the specific grounds of the party's appeal *beyond the statement that* the agency's order is not supported by reliable, probative, and substantial evidence and is not in accordance with law.

Emphasis added.

The statutory *ground* for appeal in O.R.C. 119.12(D) is "the agency's order is not supported by reliable, probative, and substantial evidence and is not in accordance with law." The clause "set forth the specific grounds of the party's appeal beyond the statement that" indicates the aforementioned statement is a *ground*.  Thus, the revised code indicates this statement made by the Parent is a ground and the SLRO committed reversible error by not finding such since the O.A.C. does not indicate the ground must be pled with specificity; especially considering the IDEA imposes only "minimal pleading standards."  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54, 126 S. Ct. 528, 532, 163 L. Ed. 2d 387 (2005).  Further, if the SLRO is a textualist and that is the reason he could not allow the amendment of the Parent's Notice of Appeal, then he should not have considered the School's Motion to Dismiss either, since there is no statutory authority allowing the School to file such Motion.  Last, as indicated earlier, previous SLRO's have held that this language was a ground.  *See* SE 3156-2015 and SE 3168-2015 attached hereto as Exhibit 3.

The next ground is made up of multiple bases for relief, action, or argument.  The Parent indicated in her Notice of Appeal she sought "a full de novo review of the issues decided, all legal

conclusions, and all findings of fact, including Hearing Officers decision regarding the statute of limitations."  It is unclear why the SLRO did not consider any of these statements as a ground for appeal since he did not state any reasons or discuss them in his Decision.  However, this language clearly provides grounds for appeal, and accordingly, the SLRO's Decision should be reversed.

### A.  Parent sought to exhaust her administrative remedies.

The last basis for relief, *action*, or argument was the Parent continued "to seek exhaustion under the IDEA in order to pursue their claims under the American with Disabilities Act, 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 and any other applicable Federal or State provisions."  *See* Parent's Notice of Appeal.  The Parent's basis for the action of appealing the local hearing officer's decision was so she could file an action under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.  20 U.S.C. 1415(l) requires exhaustion of administrative IDEA remedies prior to initiating such action. 34 C.F.R. § 300.516 (e) requires exhaustion as well.

The Supreme Court of the United States' timely decision of February 22, 2017 greatly informs this Court's review of its obligations in this matter. As the High Court recently clarified, the laws governing the rights of students asserted to be a child with a disability under the IDEA require that before the filing of a civil action seeking relief that is also available under the IDEA, the IDEA's administrative procedures shall be exhausted to the same extend that would be required had the action originally been brought under the IDEA.  *Fry v. Napoleon Community Schools*, slip opinion, 580 U.S. __, No. 15-497 (2017).  The U. S. Supreme Court emphasized that when an individual seeks relief "that is also available under the IDEA," the exhaustion of administrative remedies requirement is tantamount.

Prior to the *Fry* decision, courts were split and had a variety of different outcomes when a family filed an action under Section 504 of the Rehabilitation Act and the Americans with Disabilities

Act against a school without having an IDEA administrative due process hearing, even when they were

seeking a remedy that is not available under the IDEA and often when they had no IDEA issues

altogether.  Consider this passage from the Sixth Circuit last year prior to *Fry* when discussing

exhaustion:

> [t]his does not mean that the courthouse door is open simply because administrative remedies are no longer available. *See Woodford v. Ngo*, 548 U.S. 81, 89–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Instead, parties "exhaust" state administrative remedies only when they properly present their claims to the relevant state administrative agency. *See Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 522 (6th Cir. 2010). The reason is simple: Exhaustion not only "enables the agency to develop a factual record" and "apply its expertise," but also allows an agency "to correct its own mistakes," thereby "promoting accuracy, efficiency, agency autonomy, and judicial economy." *Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ.*, 21 Fed.Appx. 293, 296 (6th Cir. 2001) (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)). These benefits are particularly valuable where the question touches on a traditional state and local function in which we have little expertise, such as primary and secondary education. *See Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 567 (6th Cir. 2000).

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 431–32 (6th Cir. 2016).

As indicated above, Parent raised multiple Section 504 of the Rehabilitation Act claims in her

Due Process Complaint and the Parent was seeking at least one remedy that is available under the

IDEA as well as having separate IDEA claims.  This Parent and her minor child should not suffer harm

by being precluded from filing a federal complaint regarding Section 504 of the Rehabilitation Act and

the Americans with Disabilities Act because a state hearing officer was unfamiliar with the law

regarding exhaustion and the plain meaning of the word "grounds."[9]  Clearly, the Parent placed forth a

basis for action when she indicated she was seeking to appeal the local hearing officer's decision so she

---

[9] Hearing officers must possess knowledge of, and the ability to understand the IDEA, federal and state regulations pertaining to the IDEA, and legal interpretations of the idea; the ability to conduct hearings with appropriate standard legal practice, and must possess knowledge and the ability to render and write decisions in accordance with appropriate, standard legal practice. O.A.C. 3301-51-05(K)(10)(c)(ii)(b)-(d).

could exhaust her administrative remedies, and as such, this Honorable Court should overrule and reverse the SLRO's Decision and allow the Parent to continue forward with her action against the School.

**V.     The statute of limitations has not expired for Parent's nor R.C.'s claims.**

Parent's IDEA claims should be tolled since tolling would not be inconsistent with the statute, or in the alternative, the SLRO should have allowed Parent to amend her Notice of Appeal as she sought once the School questioned the Notice of Appeal.

> Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
>
> After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.

O.R.C. 2305.16 Tolling due to minority or unsound mind.

The Sixth Circuit discussed Ohio's minority tolling statute and the tolling of the statute of limitations for a student's and parent's cause of action for 42 U.S.C. 1983 and Section 504 of the Rehabilitation Act claims in *Bishop v. Children's Center For Developmental Enrichment*, 618 F.3d 533 (6th Cir 2010).  The *Bishop* Court held

> [w]hen the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are "inconsistent with the federal policy underlying the cause of action under consideration." *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980).  In Ohio, unless otherwise provided, if a person was within the age of minority at the time his claim accrued, he may bring the claim within the statutory period after the disability was removed.  *See* Ohio Rev. Code. § 2305.16. If the minor plaintiff's claims are joint and inseparable with the claims of other parties, they too can benefit

from his disability and bring their claims within the statutory period after his disability ends.

*Id. at 537.*  The *Bishop* Court held that Rehabilitation Act and 1983 claims are claims that should be tolled under the minority tolling statute because they are not inconsistent with either of the statutes and allowed both the student's claims and the parent's claims to be tolled.  *Id.*

Under Ohio law, claims can be "joint and inseparable" even though they are "separate and distinct." *Fehrenback v. O'Malley*, 841 N.E.2d 350, 366 (Ohio Ct. App. 2005).  "It is not a novel proposition to say that parents have a recognized legal interest in the education and upbringing of their child. *See, e.g.*, *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529, 127 S. Ct. 1994, 2003, 167 L. Ed. 2d 904 (2007).  Thus, Parent and R.C. have separate and distinct IDEA and Section 504 of the Rehabilitation Act claims and R.C. has individual American's with Disabilities claims.

The *Bishop* Court held the goal of Section 504 of the Rehabilitation Act is to protect individuals with handicaps from discrimination.  *Bishop v. Children's Center For Developmental Enrichment*, 618 F.3d 533 (6th Cir 2010).  The IDEA's purposes are to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; to ensure that the rights of children with disabilities and parents of such children are protected; and to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities; to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families; to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical

28

assistance, dissemination, and support; and technology development and media services; and to assess, and ensure the effectiveness of, efforts to educate children with disabilities. 20 U.S.C. 1400(d)(1)-(4). Therefore, both Parent's and R.C.'s IDEA claims should be tolled since tolling is consistent with the statute, or in the alternative, the SLRO should have allowed Parent to amend her Notice of Appeal as she sought once the School questioned the Notice of Appeal.  There is no good reason not to address these claims now instead of waiting for R.C. to raise them again when he gets older.

**VI.    The IHO's Decision should be reviewed because it is causing harm to children in Ohio.**

Harm is occurring to this child and other children in Ohio by the IHO not having her decision reviewed. The IHO's decision is atrocious. The IHO is using an "anachronistic" standard that has not been good law in the Sixth Circuit since 2004 and arguably since 1997. *Oakstone Cnty. Sch. v. Williams*, No. 2:11-CV-1109, docket entry #66 at pg. 4 (S.D. Ohio June 12, 2013). The *Oakstone* Court indicated:

> Since 1997, the IDEA has required "an IEP to confer 'meaningful educational benefit' gauged in relation to the potential of the child at issue." *Deal v. Hamilton County Bd. Of Educ.*, 392 F.3d 840, 862 (6th Cir. 2004). The Sixth Circuit explicitly recognized the abrogation and provided the new governing standard for IDEA claims in *Deal*.
>
> A basic LEXIS or WestLaw search reveals that *Deal*, not *Rowley*, states the Controlling IDEA standard in the Sixth Circuit. [The School's] counsel regularly litigates under the IDEA and should be aware of the law as it has stood for nearly a decade… What is more egregious still is that [the School's] counsel is manifestly aware of the *Deal* case because she cites it multiple times in the memorandum she requests leave to file. It confounds the imagination that an experienced lawyer could have read the *Deal* case and missed the following section:
>
> > We [the Sixth Circuit] agree that the IDEA requires an IEP to confer a "meaningful educational benefit" gauged in relation to the potential of the child at issue.
>
> Id. at pgs. 4-6.

The *Oakstone* Court went on to say:

> The egregious conduct of [the School's] counsel is that the legal standard for which [the School's] counsel argued in the motion has not been good law in the Sixth Circuit since

29

> 2004, and arguably since 1997. A cursory inquiry into the IDEA would have put [the School's] counsel on notice of that fact. The conduct is particularly troubling in light of the fact that [the School's] counsel is experienced in education law and regularly litigates under the IDEA, apparently without knowing the current state of the case law. Such ignorance is not reasonable for a litigator so experienced in the IDEA.

*Id*. at pg. 9.

The IHO in this matter has been a hearing officer since 1998, used the same legal standard as the attorney in *Oakstone* despite citing *Deal* in her Decision, and does not appear to use the correct standard of law in any of her decisions relating to the substantive provisions of FAPE since 2004, including in this matter. *See* IHO resume attached hereto as Exhibit 5; IHO Decision at pg. 25. This "egregious conduct" is extremely detrimental to children and families since the standard the IHO uses does not provide children the level of educational benefit they are due in our circuit; which is her job to know. Clearly, "such ignorance is not reasonable for a litigator so experienced in the IDEA." This failure to apply he correct standard of law in numerous cases is causing harm to many children in the State of Ohio, has caused harm to R.C., and must be rectified to prevent further harm to children in our state.

**CONCLUSION**

This Honorable Court should reverse the SLRO's Decision as a matter of law and public policy. The Parent seeks for this Court to allow her to continue forward with the IDEA appeal and to add in her other causes of action in the United States District Court since it would be futile to return to the SLRO and waste more of this child's precious education, or at a minimum, find that the Parent has exhausted her administrative remedies and now may file a Section 504 of the Rehabilitation Act and Americans with Disabilities Act claim in a court of competent jurisdiction

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2017 a copy of this Brief was filed electronically. Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Jason Wallace_____

Jason Wallace (0090167)
Attorney for Plaintiff